————————o————————

## No. 5634.

## GAUCHE REALTY CO. vs. MERLE & HEANY MFG. CO. OF ILLINOIS.

### Syllabus.

Issues of fact only are involved herein.

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 85,999. Hon. T. C. W. Ellis, Judge.

J. J. McLoughlin, for plaintiff and appellee.

Hall, Monroe & Lemann, for defendant and appellant.

F. A. Middleton and St. Clair Adams, attorneys.

His Honor, HORACE L. DUFOUR, rendered the opinion and decree of the Court as follows:

This is a suit for an accounting arising under the following circumstances:

The plaintiff was the owner of the premises at No. 120 Royal Street which were rented to one Curry, who had on the place several pool and billiard tables bought from the

defendant, and on which there remained due a balance of the purchase price.

On October 1st, 1906, a new lease was made for one year from October 1st, 1906, at the rate of $200 a month.

On the same day, a written agreement was entered into between the plaintiff, through Winfield Gauche, and the defendant, through Caulfield, the defendant's local agent, which contained substantially the following stipulations:

Curry was to run the premises as long as he paid the rent promptly but, upon his failure to pay rent, such failure was to be reported to the defendant's representative in this city who, with the plaintiff was to take charge of the business for their mutual interest.

Out of the daily receipts was to be taken sufficient money to pay the running expenses and rent and the balance was to be paid to defendant on account of the unpaid price of the tables. After this joint operation of the business, the lessor agreed, should there be a loss at the expiration of the lease, to allow defendant to remove its property from the leased premises without any liability on its part for the rent.

The defendant's answer sets up the general issue and denies that the property produced enough revenue to pay the rent.

It appears that Curry paid the rent up to March inclusive and, upon his failure to pay the rent for April, due May 1st, Gauche notified the defendant's agent, Caulfield of the fact. The letter appears, according to his own statement, to have "acted as custodian of the daily receipts in order to meet the obligations of the establishment as they matured" for about eight months, from October 1st, 1906, to some time in June, 1907.

He states that Gauche was fully advised as to the receipts and disbursements, as a daily memorandum of said amounts was furnished him monthly.

— 53 —

This is absolutely denied by Gauche.

Caulfield also states that "I (he) had when I left New Orleans a book in which an accurate account of the receipts and disbursements of the Curry Billiard Hall was kept. This book was in the office when I left there."

Gramlich, the representative of the defendant company to whom, in May, 1908, Caulfield turned over the effects of the New Orleans office, says that "among these effects, there were no books, papers or documents of any description giving an itemized statement of or relating to the receipts and disbursements of the Curry Billiard Hall."

In the conflict of testimony, the District Judge accepted the statement of Gauche that he consented to the removal of the tables on the promise of defendant's agent to pay the rent, and he also reached the conclusion that there was no reliable testimony that the business was run at a loss after the lessee's default in the payment of rent.

He cogently adds:

"Defendants took charge under the obligation to account for the collection to the lessors. This they did not do, and although return was made daily to the agent and a record made, the defendants who owe the account give none and say they have none—a statement hard to believe. * * * It was careless in plaintiffs not to exact a monthly account, but their failure to do so did not free the defendants from the obligation of keeping the account and rendering it to plaintiff when called upon."

The judgment was for $814.06 with 8% per annum interest from May 1st, 1907 and 10% attorney's fees on the whole amount, but no information is given us as to how this amount is reached. An answer to the appeal asks for an increase.

The testimony of Curry, owing to his occasional absence from the city and to grief over the death of his wife

which kept him away from his place of business, sheds no satisfactory light as to the amount of business done. But it is shown that the money collected was turned over to Caulfield and that some of it, after payment of rent and running expenses, was paid defendant on account of the price due on the tables. This would tend to exclude the theory that the business was being run at a loss.

According to Caulfield the monthly receipts, during the time he operated the concern, were about $300 and the sub-rent $30, and that the expenses were $200 for rent and $100 other expenses. No account or voucher shows what has become of these collections, or when the revenues lessened and for how long, and defendants' failure to explain and account make them liable to plaintiff. The burden of proof was upon them, the facts being exclusively within their knowledge.

The amount of rent due is $1200 and that admittedly received by plaintiff is $198.65, balance due $1001.35. But defendants cannot be held for interest on the rent note, and attorney's fees as if they were sureties on the lease.

It is therefore ordered that the judgment be amended so as to read as follows:

It is ordered, adjudged and decreed that there be judgment in favor of the Gauche Realty Co., and against the Merle-Heany Manufacturing Company for the sum of one thousand and one 35/100 dollars ($1001.35) with legal interest from judicial demand until paid, appellee to pay costs of appeal, and as amended the judgment is affirmed.

Amended.

Opinion and decree, November 25th, 1912.

Rehearing refused, December 23rd, 1912.